49  643
50   38

## The Wichita & Western Railroad Company v. Gettie Fechheimer.

1. Pleadings—*Amendment—Presumption on Appeal.* The defendant in error, plaintiff below, filed in the court below a petition, an amended petition, and a second amended petition. What the allegations of the original petition were is not shown; the allegations of the amended petition are, to some extent, indefinite; but the allegations of the second amended petition clearly constitute a cause of action in favor of the plaintiff below and against the defendant below for a permanent taking and appropriation by the defendant below of a portion of the plaintiff's land for railroad purposes; and also constitute causes of action in favor of the plaintiff below and against the defendant below for trespasses upon such land. *Held,* That the supreme court cannot say that there was any substantial departure in the second amended petition from the allegations of the other pleadings as to the facts stated, or that the court below erred in permitting the plaintiff below to file her second amended petition.

2. Railroad—*Land Taken—Measure of Damages.* Where a railroad company, in constructing its railroad, constructs an embankment upon which it places its railroad tracks, and the railroad tracks are not placed upon the plaintiff's land, but the embankment extends over and upon the plaintiff's land and occupies a portion thereof of about 8 feet in width by 450 feet in length, *held,* that the plaintiff may maintain an action against the railroad company as for a permanent taking and appropriation of a portion of her land, and for damages to the extent of the depreciation in value of her land caused by such taking and appropriation.

3. Misconduct of Plaintiff—*Jury—New Trial.* The plaintiff furnished to the bailiff a box of cigars, and he distributed them to such

of the jurors as desired to take them. The facts stated in the opin-
ion, and *held*, under such facts and the circumstances of the case,
that the supreme court cannot say that the court below erred in
overruling the defendant's motion for a new trial founded upon the
ground of this furnishing and distribution of cigars.

### *Error from Sedgwick District Court.*

THIS was an action brought, at some time not shown, in
the district court of Sedgwick county, by *Gettie Fechheimer*
against the *Wichita & Western Railroad Company.* After
judgment in that court in favor of the plaintiff and against
the railroad company for $1,400, the case was brought by
the railroad company to the supreme court, in which court
the judgment of the district court was reversed, and the case
remanded for another trial. (*W. & W. Rld. Co. v. Fechheimer*,
36 Kas. 45.) After its return to the district court the plain-
tiff filed an amended petition, and afterward, with leave of
the court, filed a second amended petition. In the second
amended petition, the plaintiff alleged, among other things,
that she was the owner of certain real estate described therein;
that the railroad company, about August 15, 1883, perma-
nently constructed its railroad across such land, and committed
various wrongs and trespasses with respect thereto, to the great
injury of the plaintiff. This second amended petition contains
five counts and five supposed causes of action. The defend-
ant filed an answer to this second amended petition, which
answer contains a general denial, and also contains, among
others, allegations that the property appropriated by the
railroad company was a public street in the city of Wichita,
known as Orme street, which the railroad company was per-
mitted to occupy under and by virtue of certain city ordi-
nances; and that none of the land entered upon or injured
by the railroad company belonged to the plaintiff; and that
each of the several causes of action alleged in the second
amended petition had accrued more than two years prior to
the filing of such petition. To this answer the plaintiff filed
a reply containing a general denial. Upon these pleadings a

trial was had before the court and a jury, and the jury rendered a general verdict in favor of the plaintiff and against the defendant, assessing the plaintiff's damages at $1,500; and also, in answer to the following special questions of fact, returned the following answers, to wit:

"1. Is it not a fact that Starr & Burris, contractors, cut down, or caused to be cut down and destroyed, the hedge and the fruit trees, and built the embankment in question? A. Yes.

"2. What amount of damages, if any, in your general verdict, do you allow for the destruction of the hedge? A. None.

"3. What amount of damages, if any, do you allow for the destruction of the cottonwood trees, and for the destruction of the shade trees? A. None.

"4. What amount of damages, if any, do you allow in your general verdict for the destruction of the fruit trees? A. None.

"5. What portion of the plaintiff's cabbage and tomatoes would have been destroyed by the freshet had not the embankment been built? A. We do not know.

"6. What proportion of the embankment is on the 25-foot strip of the premises claimed by the plaintiff? A. Eight feet wide by 450 feet long, on west end.

"7. What amount of damages, if any, in your general verdict, by reason of the pulling up and injuring the wire fence? A. None.

"8. Is it not a fact that the center line of the railroad track is 9½ feet south of where the hedge was claimed by the plaintiff as being, on the south side of her premises? A. Yes.

"9. In operating the trains over the track, what portion of said train, if any, touches the plaintiff's premises? A. None.

"10. What amount of damages, if any, in your general verdict, do you allow, by reason of noise, dirt, smoke, shaking of ground, whistling and ringing of bells in the operating of defendant's train over said track? A. None.

"11. What amount of damage, if any, do you allow in your general verdict, by reason of the ponds of water that have been flowed back upon plaintiff's premises? A. None.

"12. Was there a mistake in the description of the south boundary of plaintiff's premises, in the original deed from

Greenway to the plaintiff, which was mutual to Mr. Greenway and to the plaintiff? A. Yes.

"13. If you answer the last question 'Yes,' when did such mistake come to the knowledge of the defendant? A. We do not know.

"14. Does Mr. Greenway admit that there was such a mistake? A. Yes.

"15. Is it not a fact that on the 6th day of August, 1883, the said city, by its mayor and common council, opened and extended, for the purpose of improving the same, a certain street in said city known as Orme street? A. Yes.

"16. If you answer the last question in the negative, when did they open it up, if at all? A. We do not know.

"17. Is it not a fact that said Orme street extended beyond, and directly on the south and contiguous to the premises described in the plaintiff's petition? A. No.

"18. Was the railroad built on the south of the plaintiff's premises built mainly on Orme street? A. No.

"19. If you answer the last question in the negative, on what premises was that portion of the railroad lying immediately south of plaintiff's premises built? A. A. J. Greenway's.

"20. Is it not a fact that said Orme street was opened, widened and extended to the Arkansas river some time during the month of August, 1883? A. No.

"21. Did the city of Wichita, by its mayor and common council, by an ordinance enacted and passed on the 19th day of July, 1883, grant to the defendant the right to construct a railroad track down Orme street, from the east line of said city, due west on the Arkansas river? A. We find that the mayor and the common council of the city of Wichita passed an ordinance of this character; but we further find that Orme street was not opened from Water street to the Arkansas river; that part of said ordinance relating to that part of Orme street is invalid.

"22. When was the said Orme street extended to the Arkansas river, if at all? A. We do not know.

"23. When was the said Orme strip occupied by defendant, if at all? A. We do not know.

"24. What portion of plaintiff's premises, if any, was actually occupied by the defendant the time of the commencement of the action or before, if any? A. 8 feet by 450 feet on north side of embankment, on west end of premises.

"25. What portion of the damages, if any, do you allow plaintiff, in your general verdict, for the destruction of the hedge fence and trees by the defendant? A. None.

"26. What portion of the damages do you allow the plaintiff in your general verdict, by reason of the occupation of a portion of the premises by the defendant, if any? A. none.

"27. What damages do you allow in your general verdict, by reason of the alleged overflow of plaintiff's premises, and and the destruction of the garden, if any? A. None.

"28. Is it not a fact that the only portion of defendant's railroad which is actually upon the 25-foot strip claimed by the plaintiff to have been appropriated by the railroad is the earth on the north side of an embankment which spreads out on the average of about eight feet in width, for about 450 feet on the west side of plaintiff's premises? A. Yes.

"29. Is it not a fact that no part of the ties or rails of the said railroad is upon plaintiff's premises? A. Yes.

"30. What amount, if any, do you allow in your general verdict for the strip of earth in the embankment which is on the 25-foot strip in question? A. None.

"31. Were the bridge and the embankments approaching the bridge properly constructed? A. We do not know.

"32. If you answer the last question in the negative, state in what respect said embankment and bridge were not properly constructed. A. We do not know."

The court rendered judgment in favor of the plaintiff and against the defendant, in accordance with the general verdict; and the defendant, as plaintiff in error, again brings the case to this court for review.

*Geo. R. Peck, A. A. Hurd, Robert Dunlap,* and *F. W. Bentley,* for plaintiff in error:

1. The court erred in permitting the plaintiff to amend her petition by changing her cause of action from a trespass, and substituting therefor a cause of action for compensation for the taking and appropriation of a strip of land.

By reference to the amended petition, it will be seen that the plaintiff's original action was for a trespass merely, in which she alleged that the railroad company wrongfully and

against her consent entered upon her land and committed certain trespasses, and she claimed damages of the defendant in the sum of $5,000 for said injuries, "up to the time of bringing this suit," and in such action she could only recover such damages as already accrued to her up to the time of bringing her suit.    Title does not pass by judgment in such action. *Uline v. N. Y. &c. Rld. Co.*, 101 N. Y. 98; *Ottenot v. N. Y. L. E. & W. Rld. Co.*, 43 Am. & Eng. Rld. Cases, 129; *Carl v. L. &c. Rly. Co.*, 46 Wis. 626.

When the case came on for trial, however, counsel desired to change the nature of their cause of action or claim, and the court gave them leave, on their application, to amend their petition so as to sue for the permanent appropriation and injury to plaintiff's premises, and recover all damages present and future, and this the court, over the objection of the defendant, permitted them to do.    This was not only unjust, but it was something wholly unauthorized.    The parties had tried this action for a trespass, and a great deal of expense and costs had been incurred in trying that action. It was not fair, therefore, to the defendant, to permit the plaintiff to alter her cause of action and sue for the permanent appropriation; because, if she sued to recover compensation for the permanent appropriation she ought to have discontinued her former suit, and brought a new suit, and given the defendant the right to plead the statute of limitations.    This amendment at this stage of the case is one which could only be allowed, if at all, by the court, by virtue of § 139 of the code of civil procedure; but the court could only allow it in the furtherance of justice by "inserting other allegations material to the case," "when such amendment does not change substantially the claim or defense."    If it does substantially change the claim, then even the court cannot permit an amendment to be made.

There is a vast difference between a cause of action or claim for a trespass to real estate, and an action which the courts have recently given to the land-owner to permit him to recover compensation for the taking of his land.    In the first

case, the plaintiff relies upon a tort, or a wrongful entry upon the land. In the second case, the plaintiff is obliged to waive the tort, treat the entry as lawful, and seek to recover compensation for the taking of the land, because in the second suit the judgment and the pleadings must show that, when the compensation is paid, the title to the land passes to the railroad company; and it is therefore incumbent upon the plaintiff in such a suit to treat the possession of the railroad company, not as wrongful, but as taken under the law. This is clearly pointed out in the case of *Weir v. St. L. Ft. S. & W. Rld. Co.*, 40 Kas., on page 140.

Now, manifestly, if the compensation is to be assessed as of the time when the property was taken, it follows that the plaintiff must treat the occupancy of the railroad company in the first instance as being lawful, and not as a trespass. When this suit was first instituted by the plaintiff, she in her pleadings treated the possession of the railroad company as wrongful and as a trespass, and therefore she ought not to be permitted now to change the nature of her claim by asserting that the possession of the railroad company was rightful, and seeking compensation for the permanent appropriation of the land, if any. See *Brown v. Mining & Smelting Co.*, 32 Kas. 529; *Irwin v. Paulett*, 1 id. 392; *Scott v. Smith*, 2 id. 439; *Newton v. Allis*, 12 Wis. 378, 380; *Stevens v. Brooks*, 23 id. 196, 199; *Board of Supervisors v. Decker*, 34 id. 378; *Sweet v. Mitchell*, 15 id. 641; *Larkin v. Noonan*, 19 id. 82.

2. The plaintiff cannot recover compensation for a permanent appropriation, because, first, the railroad company does not and has not occupied with its tracks any land belonging to plaintiff; second, because, before the filing of the amended petition, the land was condemned by the city as a street, and the occupation of the street by the railroad company was legalized by ordinance.

Examining the testimony in this case, it will be found that no portion of the track was placed upon the premises of the plaintiff, and the jury so found. The railroad company, in the operation of its trains over the track does not occupy or

take possession of any part of the premises claimed by plaintiff. Now, although Mrs. Fechheimer was not found by the appraisers to be the owner of this land, yet if she claimed any interest in the land it was her duty to appear and assert that right, and if not satisfied with the damages awarded, to take an appeal. The proceedings to condemn this land were essentially proceedings *in rem*, conducted by a board of appraisers duly appointed. They acted upon the property, ascertained the owner where they could, and assessed damages. Notice is given of this, and it is the duty of all who claim any interest in the land to appear before that board and assert their rights; or, if no damages are awarded to them, they have a right to appeal to the district court. The city engineer found from the records that a strip 70 feet wide appeared to belong to A. J. Greenway, and, so far as Fechheimer's deed to the land was concerned, the title still appeared to be in Greenway. Therefore, in making an assessment of damages to Greenway, the city would be protected. So, before Mrs. Fechheimer procured her quitclaim deed the land had been condemned, and damages were awarded to Greenway. The quitclaim deed, therefore, as against the city or those claiming rights from the city, could not avail the plaintiff, because it was made subsequent to the condemnation.

The court erred in admitting evidence concerning the depreciation in the value of plaintiff's premises by reason of the construction and operation of the railroad; also, in submitting the case to the jury upon the theory that there might be a recovery on account of the construction and operation of the railroad, and for the depreciation of the premises thereby; and it will also be seen that the verdict of the jury is erroneous, because from the special findings it appears that they allow damages, not for any trespass, but for the depreciation in the market value of the premises by reason of the construction and operation of the railroad.

3. The court erred in the admission of evidence. The court erred in permitting the plaintiff to produce testimony concerning an alleged depreciation of the market value of the

premises on account of the construction and operation of the railroad, since the witnesses base such depreciation upon the fact that the railroad was not constructed upon the premises of the plaintiff. In all cases it will be found that these witnesses based their idea of damages for depreciation on account of the noise and smoke, nervous shock, and danger to children, as will be seen by reference to the evidence heretofore quoted by us in the statement of this case. Now, inasmuch as the railroad company did not construct its track or operate its railroad over any portion of the premises claimed to be owned by the plaintiff, as we have shown heretofore; and inasmuch as it did not intend to appropriate or use any of the plaintiff's premises in the operation of its railroad, the court erred in permitting evidence of this sort to be introduced, because such damages were not permissible under the facts.

4. The court erred in certain instructions given to the jury, particularly the 10th, 12th, 13th, 14th, 18th, 20th, and 22d.

The instructions requested by the defendant all limit the consideration of the assessment of damages to those which had accrued up to the time of the institution of the suit. These instructions should have been given, because the plaintiff alleged a trespass and sued to recover originally for the trespass. It is. true she alleged causes of action for a trespass even in the second amended petition; but she cannot recover upon two theories which are so wholly inconsistent with each other. We do not care to refer to these instructions in particular.

5. Misconduct of the jury. It will be seen from this testimony that the jury were taken to view the premises, and while upon Fechheimer's land Mrs. Fechheimer brought out a box of cigars and gave them to the deputy sheriff to hand to those of the jury who smoked, and a number were taken, some of the jury naturally supposing these cigars belonged to the plaintiff.

We ask that the evidence be carefully scrutinized by the court, and it will be seen that there was a manifest intention

on the part of the plaintiff and her husband, who was acting throughout as her agent, to get the jury, when they were viewing her premises, to feel favorably toward her. It may be argued that a few cigars to a jury were not much, but still the plaintiff had no right in any way, by giving anything, to dispose the jury in her favor.

6. The defendant is entitled to judgment on the special findings of the juy.

These special findings are set out in the statement. From them it will be seen that the jury do not allow damages for any items of the trespass mentioned in the petition or claimed by the plaintiff. The jury also found that the railroad track, and cars operated over the same, do not' occupy any portion of the premises which the plaintiff at any time claimed to own. Now, inasmuch as, under the undisputed facts, the plaintiff cannot recover compensation for the permanent appropriation of her land, and inasmuch as the jury in their special findings find no damages in .favor of the plaintiff growing out of the alleged trespasses, the court should render judgment in favor of the defendant upon the special findings of the jury, because the only cause of action left the plaintiff (supposing she could join such inconsistent ones as trespass and an action for compensation for the taking of her land) would be for the alleged trespasses. For this the jury find nothing.

*Stanley v. Hume,* for defendant in error:

1. In *Railroad Co. v. Rice,* 36 Kas. 600, the court says: "The elements of any cause of action are — (1) A right possessed by the plaintiff; (2) an infringement of such right by the defendant." A cause of action has been well defined to be, "The fact or combination of facts which give rise to a right of action." So that, in this case, the cause of action was the wrongful act of the railroad company in entering upon the land of the defendant in error, and appropriating a part thereof to its own use and benefit. Section 139 of the code provides that amendments may be made in pleadings in furtherance of justice when such amendment does not change

substantially the claim or defense; and this court has repeatedly held that amendment to pleadings was a matter largely resting in the discretion of the court. So in this case, if the causes of action set out in the first and seconded amended petitions were the same, there was no substantial change in the claim made by the plaintiff. The language used in § 139 of the statute does not refer to the amount of plaintiff's claim, only to the nature of it; so if the nature of the plaintiff's claim in this was the same at the various stages of the proceeding, there was no limitation of the power of the court to permit amendments, so long as it did not abuse its discretion. All of the amendments allowed in this case are clearly within the provisions of § 139 of the code.

2. In a limited sense, it is true that the track of the railroad company did not occupy any of the land of the plaintiff, but the evidence shows that the track near a portion of the plaintiff's premises was constructed upon a considerable embankment, which extended over and upon the plaintiff's premises, occupying a space about 8 to 10 feet wide, and 450 feet in length. This, in the very nature of things, was a more permanent appropriation of the property, and a more complete deprivation of the use of it to plaintiff, than if the ties and rails of the company had been laid over that portion of the premises so occupied. It was such a use of that portion of the premises so occupied by the embankment as wholly deprived the plaintiff of either the occupancy or use thereof. This being the case, it is not necessary to consider whether Orme street was opened by the city, for the company occupied a portion of the land of plaintiff beyond the limits of Orme street as finally opened.

We think, however, upon a reasonable view of the case, it must be conceded that the land was occupied by the track of the railroad company. The embankment was constructed for the track, and for no other purpose. It was absolutely necessary in the proper construction of the road that the embankment should be made. The embankment was only incidental to the construction and use of the track, it was

necessary for such construction and use; and so we think it can be properly said that all of the ground occupied and covered by the embankment was occupied by the track, to which the embankment was only an incident, and for the use of which it was necessary. But whether the railroad company occupied a part of the premises of the plaintiff by the track or the embankment, if the appropriation for its uses was permanent, it was sufficient to entitle the plaintiff to maintain her action for damages for the land actually taken. And incidental to this right, was the right to recover for damages sustained to the land not taken, for any reasonable depreciation in value by reason of the construction of the road, and these two elements would include all of the elements of damage which the plaintiff sought to recover.

3. The third ground of error alleged by the plaintiff in error is, that the court erred in the admission of evidence. The argument of plaintiff in error in support of this proposition is based upon the idea that the railroad company did not construct its track or operate its railroad over any portion of the premises claimed to be owned by the plaintiff below. But, as we contend, the railroad company did operate its road over a portion of the plaintiff's premises. As we have heretofore shown, the embankment was as much a part of the railroad as the track and ties, and consequently, the embankment occupying a portion of plaintiff's premises, the road was operated over such portion; and on this theory of the case, the evidence was relevant and material.

So long as a railroad company constructs its railroad where rightfully authorized, no action will lie by a party whose property is not taken by the railroad company, although the property may be depreciated and injured fully as much as other adjacent property over which the railroad actually passes. But when, as in this case, the railroad company wrongfully takes any portion of another's property, it then becomes responsible for all of the damages growing out of its wrongful act.

The whole case is determined and settled, and the liability

fixed, by the encroachment of the railroad company upon the plaintiff's premises, to the extent of 10 feet one way and 450 feet the other, and this encroachment is a wrong which entitles the plaintiff to damages, as thoroughly and effectually as if the encroachment had extended over the whole of plaintiff's premises. So that, if a portion of plaintiff's property was actually appropriated, this would render the testimony relevant and material, and the witnesses being competent, there was no error in the admission of their testimony. When witnesses had shown their competency and had testified as to the fair market value of the premises, before and after the location of the road, a cross-examination as to how they arrived at their conclusions would only affect the weight of their testimony, and not render it inadmissible.

4. The plaintiff in error complains that the court erred in instructions given, and especially directs the attention of this court to the 10th, 12th, 13th, 14th, 18th, 20th and 22d instructions. It is not seriously urged that there is any error in the 10th, 12th, 18th and 22d instructions, but that they are misleading. In connection with all of the instructions given, we hardly think this is possible. Relative to the 13th, 14th and 20th instructions, they were given on the theory which we have heretofore contended for, that there was an appropriation of a portion of the plaintiff's premises; and if this be true, they were properly given.

5. The fifth objection urged by the plaintiff in error, "misconduct of the jury," in view of the evidence presented on that question, is certainly trivial. While the giving of cigars to the jury during the progress of a case is always questionable, and should not be allowed, no less in this case than in any other, the evidence shows that the jurors were in no way influenced by such action, and that it in no way affected their verdict; and so far as the plaintiff was concerned, she had very little, if any, connection with it.

6. The plaintiff in error further contends that it was entitled to judgment on the special findings of the jury. It assumes here, as it has all along assumed in the case, that the

plaintiff cannot recover compensation for permanent appropriation of her land. But the land of the plaintiff having been taken by the embankment, and in a broader sense by the railroad itself, she is entitled to recover for permanent appropriation, and it was upon this theory that the jury evidently allowed the plaintiff damages. In their answer to the special questions, the jury preclude the idea that the finding was for anything else. In answer to the twenty-fourth special interrogatory, they state that 8 feet by 450 feet of the north side of the embankment, on the west end of the premises, covered and occupied the plaintiff's premises at the time of the commencement of the action. This answer is fully supported by the evidence. The evidence shows that the difference in value of the premises of the plaintiff below immediately before and after the location of the railroad was $1,000 to $2,000. The jury eliminated all other elements of damage, and found that there was a permanent appropriation, as is shown by their answer to special interrogatory No. 24. They very properly considered the difference in the value of the property the measure of damages, and allowed the plaintiff accordingly. So that the principal, if not the only question in the whole case is, as to whether there was an appropriation of any portion of the plaintiff's premises. The plaintiff in error contends there was not such an occupation as amounts to an appropriation. If the plaintiff in error is correct in this theory, it is probably correct in its conclusion. We contend that there was a permanent occupation and appropriation, and, if we are correct, the whole theory of the plaintiff in error falls to the ground, and the verdict of the jury must be sustained.

The opinion of the court was delivered by

VALENTINE, J.: The amount of the plaintiff's recovery in this case in the court below was, as will be seen from the verdict, the special findings and the judgment of the court below, the amount of the depreciation in value of the plaintiff's land caused by the permanent taking and appropriation by the rail-

road company, for railroad purposes, of a portion of such land, and nothing was recovered for the value of the land actually taken, or for any trespasses or other wrongs of a temporary character committed upon the land. The judgment was for $1,500, which was intended to be compensation only for the depreciation in value of the plaintiff's land caused by the construction and operation of the railroad. The first alleged error is as follows:

"The court erred in permitting the plaintiff to amend her petition by changing her cause of action from a trespass, and substituting therefor a cause of action for compensation for the taking and appropriation of a strip of land."

What the plaintiff's original cause or causes of action was or were, we cannot tell, for no copy of her original petition is contained in the record brought to this court. Probably, however, from a report of the case as it was tried upon the original petition, and as found in 36 Kas. 45, *et seq.*, and also as indicated by a motion of the plaintiff in error, defendant below, filed in the district court after the case was returned from the supreme court to that court and now found in the record, it might be inferred that such original petition contained allegations sufficient to authorize a recovery for damages resulting from either a permanent taking and appropriation of a portion of the plaintiff's land or for trespasses committed thereon. A portion of the original petition is contained in 36 Kas. 46, 47; and the judge of this court, in delivering the opinion of the court, used the following among other language with respect to such original petition:

"She (the defendant in error, plaintiff below) now says that she elected to bring her action for a permanent appropriation and injury, and tried the case upon that theory; and probably the allegations of the petition may be regarded as sufficient to accomplish that purpose." (36 Kas. 49.)

The said motion reads as follows:

"Comes now the defendant, and by leave of the court moves the court to require the plaintiff to amend her petition filed in the said cause and make the same more definite and

42 — 49 KAS.

certain in the following respects, to wit : To show the nature of her action, by alleging whether the same is for a permanent appropriation of the land described in said petition or for trespass thereon.''

The defendant in error, plaintiff below, in response to this motion, filed an amended petition, stating a cause of action, possibly both for permanently taking and appropriating a portion of her land for railroad purposes, and also for trespasses thereon, though it is not clear that the petition stated a cause of action for a permanent taking and appropriation of a portion of the plaintiff's land. Afterward, the plaintiff, with leave of the court, filed a second amended petition, the one now in question, stating a cause of action for a permanent taking and appropriation of a portion of her land, and also causes of action for trespasses upon such land.

We cannot say that the court below erred in permitting the plaintiff to file her second amended petition. Probably all the petitions filed by her stated substantially the same facts, and probably no one of them as to the facts stated was a great departure from the preceding one or ones; and it is the facts stated which constitute the cause of action. A prayer for relief never constitutes a part of the cause of action. Under the allegations of the original petition, the plaintiff probably had a right to prove a permanent appropriation by the railroad company of a portion of her land, and to recover damages for the permanent appropriation thereof; and the original trial was conducted upon that theory, as is shown in 36 Kas. 48, *et seq.* Under the allegations of the second petition, which was the first amended petition, it is more questionable. The facts stated are probably sufficient, but the prayer for relief is indefinite. Under the allegations of the

1. Pleadings— amendment— presumption on appeal.

third petition, which was the second amended petition, and the one now in dispute, there can be no doubt. Under all the facts and circumstances of this case, we cannot say that the court below committed any error in permitting the aforesaid amendment.

The next alleged error is as follows:

"The plaintiff cannot recover compensation for a permanent appropriation, because, first, the railroad company does not and has not occupied with its tracks any land belonging to plaintiff; second, because, before the filing of the amended petition, the land was condemned by the city as a street, and the occupation of the street by the railroad company was legalized by ordinance."

It is true that the railroad tracks do not occupy any portion of the plaintiff's land, but these tracks were constructed upon an embankment which extends over and upon the plaintiff's premises, and occupies a portion thereof of about 8 feet in width by 450 feet in length; and if the railroad is to be considered a permanent thing, which undoubtedly it is, then the use of this strip of the plaintiff's land by the railroad company by occupying it for embankment purposes must also, in the nature of things, be considered as a permanent use thereof, and as a permanent taking and appropriation thereof. There are some facts connected with this case which ought to have been shown, but which are not shown, or at best are not definitely shown. It would seem, however, from the pleadings, the evidence, and the findings of the jury, that the principal facts are substantially as follows: The land now in question belonged originally to A. J. Greenway. In 1872, he sold and intended to convey it to the plaintiff, Mrs. Fechheimer, but through a mutual mistake of the parties in describing the land in the deed of conveyance it was not conveyed. Mrs. Fechheimer, however, took the actual possession of the land and continued to hold the same until the railroad company deprived her thereof, in August or September, 1883. The land was of course hers when the railroad company took the possession thereof, notwithstanding the mistake made in the deed of conveyance. How soon after the time when the railroad company took the possession of the land the plaintiff commenced this action is not shown. The action may have been commenced early in August, 1883. On August 6, 1883, proceedings for the condemnation of the land for the

extension of Orme street, a public street in the city of Wichita, were commenced by such city, and the appraisers for that purpose filed their report on September 3, 1883.

It does not appear that Mrs. Fechheimer ever had any notice of these proceedings, or that she ever received any compensation under them for any portion of her land. There were also other irregularities in these proceedings which it is not necessary to mention. On October 4, 1883, Greenway, in order to correct his prior intended conveyance of the property to Mrs. Fechheimer, executed to her a quitclaim deed for the property. On December 26, 1887, the city of Wichita gave to the railroad company the privilege of occupying Orme street in such city. The railroad company, however, had already been occupying the plaintiff's land for more than four years. On October 25, 1888, the plaintiff filed her second amended petition. Now, it is not shown that the extension or opening of Orme street was legal or valid as against the plaintiff; but still, if it was, the defendant did not obtain any right to occupy this extension until December 26, 1887. The strip taken by the railroad company was 8 feet wide by 450 feet long; and the plaintiff below claims that this was never any part of Orme street, even if Orme street was ever legally extended and opened. In her counsel's brief it is said, among other things, as follows:

"It is not necessary to consider whether Orme street was opened by the city; for the company occupied a portion of the land of plaintiff beyond the limits of Orme street as finally opened."

We cannot say that this claim of the plaintiff below, defendant in error, is not true; but even if it were not true, still, under the facts of this case, we could not say that Orme street was legally extended or opened, or, if legally extended and opened, that it was so extended and opened before the commencement of this action; and we cannot sustain this claim of the plaintiff in error.

It is further claimed, that the court below erred in the admission of evidence, and in giving certain instructions to the

jury; but the claim of error in these respects is founded
principally upon the further claim that the railroad company
did not occupy any portion of the plaintiff's land, which, as
a fact, is not true.    The railroad company did, as a fact, oc-
cupy a portion of the plaintiff's land, and therefore these

2. Railroad—
land, taken—
measure of
damages.

claims must be considered as untenable.    This
fact gives the plaintiff the right to recover dam-
ages as for a permanent taking and appropriation
of a portion of her property.    She may recover for the de-
preciation in the value of her property caused by the perma-
nent taking and appropriation of a portion thereof.

It is further claimed by the plaintiff in error, under the
title "misconduct of the jury," that the court below erred in
refusing to grant to the defendant below a new trial.    The
facts upon which this supposed "misconduct of the jury" is
founded are as follows :    The jury were permitted to view the
premises where the railroad was constructed across the plain-
tiff's land ; and, while there and at the plaintiff's residence,
she handed to the bailiff a box of cigars, and he distributed
them to such of the jurors as chose to accept them.    The de-
tailed facts as shown by the evidence are as follows: Mrs.
Fechheimer and her husband resided upon the land.    He
was a dealer in cigars.    While the case was pending in the
court below, and before the trial, there was an uncertainty as
to when it would be called for trial, and Fechheimer asked
the bailiff to inform him with respect thereto, and the bailiff
agreed that he would do so, and Fechheimer agreed that he
would give to the bailiff a box of cigars.    While the bailiff
was conducting the jury from the court-room to the premises,
some of the jurors suggested that they ought to have cigars,
and he informed them that he would furnish them with ci-
gars when he reached the plaintiff's house.    Reaching the
plaintiff's house, and finding no male person about the prem-
ises, he requested Mrs. Fechheimer to give him the cigars,
which she did.    He then distributed a portion of the cigars,
and handed the box back to her, and one or more of the
jurors afterward took one or more of the remaining cigars

from the box while she held it. He stated to the jurors at the time it was his treat. During all this time not one word was said about the case, and nothing further was said or done that might in the least have influenced the jury concerning the case; and the testimony of the only jurors who testified in the case tends to show that the jury was not influenced by anything that was said or done at that time. No one at the time thought of there being any impropriety in the transaction, or of its having any influence upon the jury.

Now while the giving of cigars by a party to a jury or to any member thereof during the progress of a trial is always improper and generally reprehensible, yet, unless such conduct may have influenced the jury in some manner, it should not destroy their verdict afterward rendered. In this case nearly all the evidence concerning this matter was in parol, and it was heard by the judge of the trial court, who heard all the testimony given during the whole progress of the case; and evidently he did not believe that the transaction with reference to these cigars had any influence upon the verdict of the jury, and we think it should not have had any such influence; and therefore, with some hesitancy and some reluctance, we must say that we cannot hold that the court below erred in overruling the defendant's motion for a new trial founded upon this ground.

3. Misconduct of plaintiff— jury — new trial.

After a careful examination of this entire case and of all the points presented by counsel for the plaintiff in error, we are of the opinion that no substantial error was committed by the court below, and therefore its judgment will be affirmed.

All the Justices concurring.