THE CHICAGO, KANSAS & WESTERN RAILROAD COMPANY
v. JOHN STEWART.

1. RAILROAD RIGHT-OF-WAY — *Damages* — *Witness* — *Error*. In an action for damages for the appropriation of a right-of-way of a railroad through farming land, it is error to permit a witness who said he did not know the market value of the land to testify that the land was damaged $10 per acre by reason of the construction of the road.

2. AMENDED PETITION, *Construed*. The pleadings construed, and *held* to charge a permanent appropriation, and further, that both sides tried the case upon that construction of the amended petition.

*Error from Sedgwick Common Pleas Court.*

THE opinion herein, filed December 10, 1892, contains a sufficient statement of the facts.

*Geo. R. Peck, A. A. Hurd,* and *Robert Dunlap,* for plaintiff in error:

The court erred in the admission of the testimony of certain witnesses concerning the difference in the value of the land by reason of the construction and operation of the railroad. The evidence was also improper, and erroneously admitted, because it permitted the witnesses to give their opinion as to the damages sustained by the plaintiff by reason of the construction and operation of the railroad. In other words, it permits these witnesses to usurp the province of the jury. Similar questions would be improper and erroneous even in condemnation proceedings. This has been so frequently decided by this court that it is not necessary to cite more than the latest authority upon this question. *C. K. & W. Rld. Co. v. Woodward,* 48 Kas. 599.

If plaintiff sought to recover for a permanent appropriation of the land, he would have to waive the tort, and admit that the possession of the railroad company was legal and by his consent. We have already discussed this question in the case of *W. & W. Rld. Co. v. Fechheimer,* 49 Kas. 643.

3—50 KAS.

*Shields & Conly*, for defendant in error:

The objections to the testimony of plaintiff were properly overruled. The witness stated he did not know the market value of the land, but he was able to state the damages per acre to the land after the railroad was built on the land; and knowing the condition of the premises, he had a right to state his opinion as to the value of the land, and his statement with regard to the damages to the land was not an error that would prejudice the defendant, as other witnesses testified as to the value of the land after the construction of the road, and the evidence as to the value of the land before the construction of the road, which would go to show the damages to be greater than the amount stated by the witness.

As to the testimony of another witness as to the damages to the whole farm, on the evidence of its value before and after the construction of the road, it was certainly competent, as the amended petition alleges in the first count that the defendant below took possession of, held and fenced the land in question, as against the plaintiff. The whole case was tried on the theory, by both the plaintiff and defendant, that defendant appropriated the land in question permanently.

The question as to ejectment in the prayer of the second count was abandoned, and the verdict of the jury (under the instructions of the court) shows that their verdict was made up only as to the question of damages arising from the permanent appropriation of the land by the defendant company, and their failure to render any verdict on their second count whatever estops the plaintiff from urging his plea of waiver of tort.

Opinion by SIMPSON, C.: John Stewart brought this action for damages against the plaintiff in error in the court of common pleas of Sedgwick county, Kansas, alleging as a cause of action, that he was, before and at the time of filing said suit, the owner of the southwest quarter of the southeast quarter of section 27, township 29, range 2 west, of Sedgwick

county, Kansas, also the northeast quarter of the southwest quarter of section 27, township 29, range 2 west, of Sedgwick county, Kansas; that the said railroad company, well knowing the premises, did, on the 15th day of April, 1886, and divers other days thereafter, unlawfully and with force break and enter said plaintiff's above-described close, in said county and state, and make large cuts and ditches thereon, and did cut down and destroy plaintiff's growing crops, and built, or caused to be built, a railroad track through the above-described lands the entire length thereof, and took possession and still hold a strip of land 200 feet wide the whole length of the first-described piece of land, and a strip of land 200 feet wide about half the length of the second-described piece of land, and a strip of land 100 feet wide across the remaining portion of the second-described piece of land; that Stewart owned the other tracts of improved land adjoining the above-described land; and that, by reason of the unlawful and wrongful acts and doings of the said railroad company in the premises, plaintiff was damaged in the sum of $2,000, for which said plaintiff prayed judgment.

To the petition the railroad company below filed a motion asking the court to require the plaintiff to separately state and number the causes set forth in the petition, to wit: To separately state the cause of action for trespass and damages therefor, and to separately state the cause of action for ejectment as claimed in the petition, which said motion was by the court sustained. The said plaintiff below filed his amended petition in said cause on the 26th day of February, 1887, in which the order of the court was complied with, by stating the causes of action as required; the said amended petition being substantially the same as the original petition, so far as the land in question is concerned, and the unlawful and wrongful entry upon the same by said defendant, and claiming damages in the sum of $2,000, as claimed in the original petition for the entry upon said land as therein described, and for the permanent appropriation and detention of the same from the plaintiff. The railroad company filed an answer and

cross petition, in which it set up, first, a general denial; second, that on March 27, 1886, plaintiff executed and delivered to the Le Roy & Western Railroad Company a certain instrument in writing, a copy of which is attached, marked "Exhibit A," and made a part of the answer; that the Le Roy & Western Railroad Company should construct, or cause to be constructed, its line of railroad across the land on which the trespasses are alleged to have been committed, on or before the 20th day of December, 1886, and that plaintiff should, on demand, by good and sufficient deed of conveyance, sell, assign and transfer to the railroad company a strip of land 50 feet in width on each side of and along the center line of its railroad as then located; that thereupon the railroad company commenced and consolidated, and the consolidated company completed the construction of the railroad on July 1, 1886; that the Le Roy & Western Railroad Company, with other companies, became consolidated under the name of the Chicago, Kansas & Western Railroad Company; that one James Tracy was employed by the plaintiff and the Le Roy & Western Railroad Company in the execution of said instrument, a copy of which is attached, marked "Exhibit A," as a scribe in drawing said instrument; that, by a mistake mutual to the plaintiff and the railroad company, Tracy wrote the words, "the 20th day of April, A. D. 1886," instead of the 20th day of December, 1886, and left out of the description therein the following: "The southwest quarter of the northeast quarter of section 27, township 29, range 2 west," which mistake was not discovered by the parties thereto until after the construction of the railroad through the premises; that the defendant has an equitable title in the said strip of land 50 feet in width on each side of the line of railroad as located; that on March 15, 1886, upon the application of the Le Roy & Western Railroad Company, commissioners were appointed to lay out a right-of-way not exceeding 100 feet in width, and that said commissioners duly condemned a right-of-way for the railroad company, and assessed the damages in the sum of $19.95, which amount was deposited with the

county treasurer and the report filed, and a copy of the same recorded.

By way of cross petition, the defendant asks the reformation of the bond, so as to change the date from the 20th day of April, 1886, to the 20th day of December, 1886, and also so as to require the northwest quarter of the southeast quarter of section 27, etc. It stipulates for a right-of-way over the east half of the southwest quarter of section 27, and the northwest quarter of the southeast quarter of said section. Plaintiff filed an amended reply, in which he admitted that the copy of the bond marked "Exhibit A," attached to the answer, was a copy of the instrument referred to in the defendant's answer, and also admits the consolidation. It, however, denied the other defenses.

Trial was had before a jury, which returned a verdict for the plaintiff for $842.81. Special interrogatories were answered, as follows:

"1. How many acres of land do you find were actually taken by the railway company as alleged in plaintiff's petition, not including any land covered by condemnation? Ans. $7\frac{69}{100}$ acres.

"2. Do you allow the plaintiff any damages by reason of the location and construction of that part of the road constructed through the part of the farm in the south half of section 27, and if so, how much? A. Yes; for $4\frac{1}{2}$ acres — $90."

"4. Is the principal element of depreciation by reason of the construction of the road across the premises caused by cutting the pasture south of the railroad off from the stock water and tillable land north of the track? A. No.

"5. If you answer 'Yes' to the last question, how much do you find it has depreciated the value of the farm? A. [No answer.]

"6. What do you find was the value of the land actually taken? A. $153.80."

"10. How much do you find the farm was depreciated in value by the location and construction of the railroad over and across the S.W. $\frac{1}{4}$ of the N. E. $\frac{1}{4}$ of 27, on plaintiff's premises? A. $63.80.

"11. What was the value per acre of the plaintiff's land

south of the track just before the location and construction of the defendant's railroad across the same as a part of the farm?    A.. $20.

"12. What was the value of that part of plaintiff's farm south of the track just after the location and construction of the railroad across the farm as a part of the farm?    A. $1,664.79.

"13. Is it not a fact that the description, the E. $\frac{1}{2}$ of the S.W. $\frac{1}{4}$ and the W. $\frac{1}{2}$ of the S.E. $\frac{1}{4}$ of 27, covers all of the railroad on the lands described in plaintiff's petition?    A. Cannot say by above description.

"14. If you answer the last question 'No,' state what portion of the defendant's railroad on plaintiff's farm is not covered by said description?    A. [No answer.]

"15. If you find from the evidence that the defendant, in constructing its embankment through the farm in question, diverted the natural water course from its ordinary channel, thereby causing a pond of water to accumulate north of the track, if you answer 'Yes' to the last question, please state how many acres of plaintiff's farm would be injured by reason of overflowage?    A. We do not consider it a natural water course."

A motion for a new trial was made and overruled.

I. The first contention arises on the construction of the amended petition, but as it is largely controlled by the opinion of this court in the case of *W. & W. Rld. Co. v. Fechheimer*, 49 Kas. 643 (31 Pac. Rep. 127), we will not discuss it in detail, but state, in the language of Mr. Justice VALENTINE: "The amended petition states a cause of action, probably both for permanently taking and appropriating a portion of her land for railroad purposes, and also for trespasses thereon, although it is not clear;" but this much can be said emphatically, that the case was tried upon the theory, by both sides, that there was a permanent appropriation of the land, the railroad company relying for justification upon the bond for a deed set out in one of its answers. The instructions of the court to the jury were given on this theory. The claim for ejectment in the second count was abandoned. The verdict of the jury shows that they considered only the question of damages arising from the permanent appropriation of the land.

II. A witness for the plaintiff testified as follows, against the repeated objections of the railroad company:

"Ques. You say you know the market value immediately after the construction of the road? Ans. No; I do n't know it.

"Q. What is your judgment as to the market value?

"Defendant objected, as incompetent, irrelevant, and immaterial, and calling for an opinion.

"By the Court: See if he knows what damage it was to the land.

"Q. What damage was done to the land by reason of the construction of the road?

"Defendant objected, as incompetent, irrelevant, and immaterial.

"Overruled; to which the defendant excepted.

"A. I would estimate the value of the damage about $10 per acre to the farm.

"Defendant objected, as incompetent, irrelevant, and immaterial, and calling for a conclusion and not of fact, and moved that the answer be stricken out and withdrawn from the jury.

"By the Court: Let it stand. To which ruling the defendant excepts."

The same was substantially testified to by another witness. Of course the incompetency of the witnesses is shown by their own statements. In the case of *C. K. & W. Rld. Co. v. Dill,* 41 Kas. 736, in which a witness was permitted to testify that the land was worth one-third less after the appropriation, but who would not testify as to the market value of the land, the court say that the admission of the testimony, although it might be error, was not substantial or material error, because no other witness testified to a less amount of damages. But it is shown by this record that the witness McQuillan, who testified for the plaintiff, placed the damages at $5 per acre, and the witness Ross, called by the plaintiff, also fixed the damages at $5 per acre. Other witnesses testified to a greater amount of damages than the witnesses whose evidence was objected to. We conclude, therefore, as a deduction from the decision quoted above, that the evidence of this witness was material and prejudicial, and for this reason recommend a reversal of the judgment.

By the Court: It is so ordered.

All the Justices concurring.